UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| RANDALL NEUHAUSSER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 03-531-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT | ) | **MEMORANDUM OPINION** |
| OF JUSTICE, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court for consideration of the parties' cross-motions for summary judgment.[1] [Record Nos. 84, 86] For the reasons discussed herein, summary judgment will be entered in favor of the Defendant Drug Enforcement Administration.

**I.    BACKGROUND**

Randall Neuhausser filed this action seeking declaratory judgment pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974 ("PA"), 5 U.S.C. § 552a, to compel the production of certain records which he claims are in the possession of the Defendant Drug Enforcement Administration ("DEA"). Through his Complaint, Plaintiff

---

[1]    A status conference was held in this matter on October 3, 2005. During this conference, the parties advised that the issues raised in the Plaintiff's complaint could be resolved on cross briefs. The Plaintiff filed a brief on February 21, 2006, which the Court has construed as motion for summary judgment. [Record No. 84] Subsequently, the Defendant filed its motion for summary judgment on March 17, 2006. [Record No. 86] The motions have now been fully briefed and are ripe for review.

Neuhausser alleges that he was wrongfully convicted of a crime and that the DEA possesses document that will prove his innocence.[2]

According to the DEA, Neuhausser made his first FOIA request on May 27, 2001. Subsequently, over the next two years, several additional requests followed. DEA places these requests into the following categories: (1) FOIA request No. 01-1490-P, seeking information related to Plaintiff from the DEA's office in Cincinnati, Ohio; (2) FOIA request No. 03-1086-F, seeking "all DEA records pertaining to a surreptitiously recorded meeting between [himself] and James A. McCary that was monitored by DEA . . . in January-April of 1998," as well as documents related to a "swab test" performed on the tailgate of Plaintiff's 1997 F150 Ford Pickup truck; (3) FOIA request No. 04-0093-P, a FOIA request forwarded to the DEA by Executive Office of United States Attorneys ("EOUSA"); (4) FOIA request No. 04-0094-P, seeking records regarding Plaintiff's "previous request for FOIA material" as well as information pertaining to a wire-tap request between November 1997 and April 1998. In response to the Neuhausser's requests, the DEA's FOIA staff identified 485 pages responsive to the requests. It also recommended the release of portions of 95 pages and 29 pages in their entirety. However, 211 pages were withheld in their entirety. The DEA referred 145 pages to other agencies and found that five pages were not responsive to the Plaintiff's requests.

Neuhausser filed this action on October 17, 2003, asking the Court to declare, *inter alia*, that he is entitled to the documents requested, without exemption. He also seeks to have the Court order the disclosure of the subject documents. On that same date, Neuhausser filed a

---

[2]     The Plaintiff also named the EOUSA as a Defendant in this action. However, EOUSA has been dismissed and the sole remaining Defendant is the DEA.

motion for a *Vaughn* index.  Through this motion, he sought to have the Court order the Defendant to provide an itemized list of any records withheld or redacted from his FOIA and PA requests and provide an explanation of the grounds upon which the documents were being withheld or redacted.  This Court initially denied the motion based on Neuhausser's failure to provide notice to the Defendant of the pending lawsuit.  However, on September 13, 2004, the Court granted Neuhausser's  renewed motion for a *Vaughn* index.  The index was provided to the Neuhausser in July 2005 along with a declaration from Leila I. Wassom, a paralegal specialist assigned to the Office of Chief Counsel, DEA Headquarters in Washington, D.C.

## II.        THE LEGAL STANDARD

The Defendant argues that it has fully complied with the disclosure provisions of FOIA and the PA by producing all responsive, non-exempt materials.  Neuhausser contends that the exemptions cited by the Defendant do not apply to his request but, even if they did, the documents must be disclosed because the PA requires their disclosure.  He asserts that the exemptions cited by the Defendant do not apply.  In particular, he argues that the DEA must disclose the documents concerning Theodore Dunlap, inasmuch as Mr. Dunlap has waived his confidentiality/privacy rights.

### A.        The Interplay of FOIA and the PA

Courts and commentators addressing the interplay of FOIA and the PA suggest that the FOIA is a statute of disclosure that generally guarantees the public rights of access to information.  The FOIA contains nine exemptions which provide grounds for agencies to refuse to disclose information if such exemptions are applicable.  However, an agency may not

withhold or limit the availability of a document, unless one of the FOIA exemptions specifically

apply. *Rugiero v. United States Dep't of Justice*, 257 F.3d 534 (6th Cir. 2001).

In contrast, the PA is a statute dealing with *nondisclosure*. It was enacted to promote

"respect for the privacy of citizens" by a government that routinely compiles and disseminates

personal information about individuals. Under the PA, disclosure of certain information is

conditioned upon prior written consent of the individual to whom the records pertains. It further

grants an individual access to his own records, or any other information pertaining to him, which

is contained in a system of record, except under certain circumstances. As noted by a recent

decision from this Court,

> [T]he FOIA begins with the premise that all activities of a federal agency should
> be subject to public scrutiny. The PA limits this scrutiny where the information
> is personal to an individual. However, when the individual to whom the
> information pertains is also the individual requesting the information, the PA
> presumes that disclosure to that individual will occur. Stated otherwise, the PA
> provides rights to the individual with respect to his own record greater than the
> rights of the public generally.

*Dean v. F.D.I.C.*, 389 F. Supp. 2d 780, 787-88 (E.D. Ky. 2005) (citing *Wren v. Harris*, 675 F.2d

1144, 1146 (10th Cir. 1982)). In other words, "when the FOIA does not require disclosure and

the release of records is sought by the individual to whom it pertains, the PA can require

disclosure to that individual." *Dean*, 389 F. Supp. 2d at 788 (citing Paul M. Schwartz, *Privacy

and Participation: Personal Information and Public Sector Regulation in the United States*, 80

Iowa L. Rev. 553, 593 (1995)).

### B.      The Summary Judgment Standard in FOIA Cases

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

"Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D. Ky. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely upon the assertions in its pleadings; rather that party must come forward with probative evidence, such as sworn affidavits to support its claims. *Celotex*, 477 U.S. at 324. In making this determination, the Court must review all the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52).

In addressing the issues raised by the parties in the context of summary judgment, the Court must also consider the specific legal standard applicable to FOIA cases. As an initial matter, the government bears the burden of proving that its withholdings under the FOIA are lawful. *Norwood v. Federal Aviation Admin.*, 993 F.2d 570, 573 (6th Cir. 1993). Ordinarily, the agency may justify its claims of exemption through detailed affidavits, which are entitled to a presumption of good faith. Evidence of bad faith can overcome this presumption. However, if the government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the court should uphold the government's position. *See Rugiero,* 257 F.3d at 544. Here, the DEA has submitted a *Vaughn* index. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

A *Vaughn* index is a device used by an agency to describe the documents responsive to a FOIA request and outline the reasons for redactions or withholdings in sufficient detail to allow a court to make an independent assessment of the claims for exemptions without having to review a "potentially massive number of documents in camera." *Rugiero*, 257 F.3d at 544. In camera review is a discretionary measure requiring consideration of the following: "(1) judicial economy; (2) actual agency bad faith, either in the FOIA action or in the underlying activities that generated the records requested; (3) strong public interest; and (4) whether the parties request *in camera* review." *Id*. *In camera* review should be used sparingly, "when no other procedure allows review of the agency's response to a FOIA request." *Id*.

-6-

Turning to these factors, the Court notes that Neuhausser has not requested an in camera review of the subject documents.  In addition, it would appear that an in camera review of these documents would be a waste of judicial resources, particularly in light of the fact that the government has provided the Court and Neuhausser with a *Vaughn* index and supporting affidavits which outline the documents responsive to a FOIA request.  These materials outline the specific reasons for redactions or withholdings.  Further, although the Plaintiff has a strong personal interest in the matter, the Court can determine no strong public interest to be served by an in camera review.

With respect to the issue of bad faith, the Court notes that, in general, a showing of bad faith by the agency "weigh[s] heavily" in the Court's decision whether to review the documents in camera.  *Rugiero*, 257 F.3d at 544 (citing *Ingle v. Department of Justice*, 698 F.2d 259, 267 (6th Cir. 1983)).  In the instant case, Neuhausser's allegations of bad faith do not relate to this FOIA action.  Instead, these allegations concern the Defendant's alleged actions in the underlying trial.  However, in *Jones v. Federal Bureau of Investigation*, 41 F.3d 238 (6th Cir. 1994), the Sixth Circuit noted that "[e]ven where there is no evidence that the agency acted in bad faith with regard to the FOIA action itself there may be evidence of bad faith or illegality with regard to the underlying activities which generated the documents at issue."  *Id.* at 242.  Thus, the Court must consider this issue in determining whether to review the documents at issue in camera.

Neuhausser alleges that, during his criminal trial, the government intentionally suppressed exculpatory evidence of the cocaine charge.  In support of this claim, he references the

Declaration and Waiver of Privacy Form provided by Theodore Dunlap in which Dunlap states that he omitted certain details from his trial testimony after he was told to do so by the prosecutor. According to Neuhausser, this action prevented the jury from learning that he was not James McCarty's cocaine source. In addition, Neuhausser contends that he has a recorded statement from McCarty in which McCarty admits that "[the Plaintiff] didn't have nothing to do with the cocaine part of the aspect, he was the marijuana man in the whole . . . deal." [Record No. 87, p. 6] Neuhausser states that McCarty has admitted that he fabricated his testimony regarding the Plaintiff's involvement in the cocaine conspiracy because he was pressured by the government.

In *Jones*, the Sixth Circuit noted that "[w]here . . . evidence [of bad faith] is strong, it would be an abdication of the court's responsibility to treat the case in the standard way and grant summary judgment on the basis of *Vaughn* affidavits alone." *Jones*, 41 F.3d at 242-43. However, the *Jones* Court specifically found that there was strong evidence of bad faith. The court even went so far as to note that infringements of civil liberties seem[ed] well documented. . . ." *Id.* at 243. The instant case is distinguishable from *Jones* in that this Court cannot conclude that Neuhausser has presented substantial evidence that the government acted in bad faith through its disclosure of documents or in the underlying criminal action.

Given that Neuhausser has not requested in camera review, that DEA has presented a *Vaughn* index detailing it reasons for withholding the subject information, and that Neuhausser has failed to present substantial evidence of bad faith by the Defendant, this Court finds that an in camera review of the documents in issue is not required. In summary, the parties' pleadings,

the *Vaughn* index with supporting affidavits, and the relevant case law are sufficient for the Court to make an independent assessment of the claims for exemptions from disclosure under FOIA and the PA.

### III.   ANALYSIS

#### A.   The FOIA

The FOIA generally provides that the public has a right of access to federal agency records, except to the extent that the records are exempt from disclosure by one of nine exemptions.  5 U.S.C. § 552(a) (mandating availability of information); *id.* § 552(b) (setting forth exemptions); *id.* § 552(d) (stating that § 552 does not authorize the withholding of information or the limiting of availability of records to the public, except as specifically stated therein).  In the present case, the Defendant relies primarily on five exemptions in its refusal to disclose the documents at issue.  These exemptions include: (1) Exemption 552(b)(7)(C); (2) Exemption 552(b)(7)(F); (3) Exemption 552(b)(7)(D); (4) Exemption 552(b)(2); and (5) Exemption 552(b)(3).  The Defendant has also withheld information pursuant to 5 U.S.C. 552a(j)(2) of the Privacy Act.  The Court will discuss each of these in turn.

(1)   Section 552(b)(7)(C)-Exemption 7(C)

Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  In determining whether disclosure of information constitutes an "unwarranted" invasion of privacy, courts must balance the public interest in disclosure against

-9-

the possible invasion of privacy caused by the disclosure.  *See Rugiero*, 257 F.3d at 550; *see also Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989).

Law enforcement officers who work on criminal investigations and individuals who provide information to the law enforcement authorities have privacy interests.  Thus, their identities have traditionally been protected from disclosure by Exemption 7(C).  *Davis v. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir.1992)  Further, private citizens who may be mentioned in investigatory files, suspects, witnesses, and informants enjoy a privacy interest.  *Davis*, 968 F.2d at 1281.  On the other hand, there is generally no public interest in the disclosure of such information because this information sheds no light on an agency's performance of its duties.  *Davis,* 968 F.2d at 1281 (citing *Fitzgibbon v. CIA,* 911 F.2d 755, 768 (D.C. Cir. 1990); *SafeCard Serv. Inc. v. S.E.C.,* 926 F.2d 1197, 1205 (D.C. Cir. 1991) (noting that because disclosure of "the identity of targets of law-enforcement investigation can subject those identified to embarrassment and potentially more serious reputational harm . . ., public interest in disclosure is not just less substantial, it is insubstantial").

In the present case, the material at issue contains information which identifies witnesses and investigators involved in the drug investigation of Neuhausser.  However, these documents do not shed any light on the conduct of the DEA.  The Supreme Court has held that the release of "information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct" does not further the FOIA's basic purpose of "open[ing] agency action to the light of public scrutiny." *Reporters Comm*., 489 U.S. at 772-73.  Accordingly, the Court finds that those portions of the requested material which

-10-

identify witnesses and/or investigators involved in the Plaintiff's drug investigation were properly withheld under FOIA Exemption 7(C) because their privacy interests are not outweighed by the public interest in disclosure.

(2) Section 552(b)(7)(F)-Exemption 7(F)

Under Exemption 7(F), documents may be exempted from disclosure if they are "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F).  The Defendant is entitled to invoke this exemption if the safety of the individual in question would be jeopardized by revealing his or her identity.  *See e.g., Malizia v. United States Dep't of Justice,* 519 F. Supp. 338, 351 (S.D.N.Y. 1981) (withholding of agents' identities proper where revelation of information could "unnecessarily jeopardize[ ]"the agents' lives).

In *Rugiero*, the Sixth Circuit held that it was proper to withhold the names of DEA agents inasmuch as disclosure of their identities "could reasonably be expected to endanger [their] life or physical safety."  *Rugiero*, 257 F.3d at 552.  Likewise, in *Amro v. United States Customs Serv.*, 128 F. Supp. 2d 776, 789 (E.D. Pa. 2001), the court found that the DEA had adequately supported its case for withholding the names of special agents and law enforcement officers pursuant to Exemption 7(F).  In light of these authorities, the Court finds that the DEA has properly invoked Exemption 7(F) to withhold documents that contain the names and other identifying information of law enforcement agents.

-11-

(3)  Exemption 552(b)(7)(D)-Exemption 7(D)

Exemption 7(D) prevents the disclosure of information compiled during a criminal investigation is such information could reasonably be expected to disclose (1) the identity of a confidential source or (2) information furnished by a confidential source.   5 U.S.C. § 552(b)(7)(D).  This exemption does not involve a balancing of public and private interests.  Rather, if the source was confidential, the exemption may be claimed regardless of the public interest in disclosure.  *Ferguson v. F.B.I.,* 957 F.2d 1059, 1068 (2nd Cir. 1992); *Irons v. F.B.I.,* 880 F.2d 1446, 1449 (1st Cir. 1989).

The United States Supreme Court analyzed this exemption in *United States Department of Justice v. Landano*, 508 U.S. 165 (1993).  In *Landano,* the Court noted that "a source is confidential within the meaning of Exemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'"  *Id.* at 172.  While the Court did not disturb the obvious point that sources who spoke with *express* assurances of confidentiality are always "confidential" for FOIA purposes, the *Landano* Court unanimously held that the government is not entitled to a presumption that *all* sources supplying information in the course of a criminal investigation are confidential within the meaning of Exemption 7(D).  Rather, it determined that an implied assurance of confidentiality could be found only where the circumstances of the criminal investigation "provide a basis for inferring confidentiality."  *Id*. at 181.  The *Landano* Court noted that the "nature of the crime that was investigated and the source's relation to it" are

-12-

particularly relevant in determining whether there was an implied assurance of confidentiality.

*Id.*

Here, the DEA claims Exemption 7(D) applies to sources who were expressly guaranteed confidentiality and to those who provided information on an implied assurance of confidentiality. Through the declaration of Ms. Wassom, the DEA has delineated between those informants who received express assurances of confidentiality and those who received implied assurances of confidentiality. In Paragraph 91, Ms. Wassom states that the DEA's "coded informants" received express assurances of confidentiality by virtue of the DEA's policies and procedures. This paragraph provides that:

> Coded informants are individuals who have a continuing cooperative association with DEA. These individuals are expressly assured confidentiality in their identities and the information they provide to DEA. They are also assured that their names will not be used in DEA investigative materials. *They are assigned an identification code which is used in place of their name* or referred to as CI (Cooperating Individual).

*Wassom Declaration*, ¶ 91.

> In a recent opinion from the Eastern District of Michigan, that court noted:

> an individual assigned a CI code has necessarily been given an express assurance of confidentiality, because written DEA policy requires that all coded informants be given such assurances. Pursuant to the DEA Agents Manual, coded informants shall be advised at the outset that . . . information they provide may be used in a criminal proceeding, and that, although the DEA will use all lawful means to protect their confidentiality this cannot be guaranteed.

*Rugiero*, 234 F. Supp. 2d 697 (E.D. Mich. 2002). Ms. Wassom's declaration demonstrates that the DEA exercised the practice of assigning a code to individuals to replace their names in order to protect their confidentiality. Ms. Wassom has specifically identified which of the DEA

-13-

documents contain references to coded informants.  *Wassom Declaration*, ¶¶ 92, 93, 94, 95 and 96.

The Court finds that the DEA has presented sufficient proof that the coded informants were given express assurances of confidentiality.  *See Campbell v. United States Dep't of Justice,* 164 F.3d 20, 34 ("evidence [of express assurances of confidentiality] can take a wide variety of forms, including . . . contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources." (emphasis added)); *Davin v. United States Dep't of Justice,* 60 F.3d 1043, 1062 (3rd Cir. 1995) (to utilize the FOIA "exception for express promises of confidentiality, [the Government] must produce evidence of its alleged policy and practice of giving all symbol numbered informants or code name sources express assurances of confidentiality"); *Manna v. United States Dep't of Justice,* 51 F.3d 1158, 1167 (3rd Cir. 1995) (rejecting an FOIA requester's argument that sources should not be considered confidential merely because they had been *assigned numbers* and that the Government should have established that each source specifically furnished information with the understanding that the communication would not be divulged).  Accordingly, the Court finds that the Defendant properly exempted the documents containing information from sources who received express assurances of confidentiality from disclosure under Exemption 7(D).

The DEA also claims Exemption 7(D) with respect to documents containing information obtained from sources who were given implied assurances of confidentiality.  As noted above, in order to determine whether a source received an implied assurance of confidentiality, the

Court must consider the nature of the crime and the source's relation to it.  The DEA again references Ms. Wassom's declaration to support its position.

In her declaration, Ms. Wassom notes that Neuhausser was convicted of distributing cocaine and marijuana.  *Wassom Declaration*, ¶ 104.  Further, she states that some of the sources provided information regarding drug activity that they directly participated in with the Plaintiff. Moreover, as noted by the Defendant, in *United States v. Neuhausser*, 241 F.3d 460 (6th Cir. 2001), the Sixth Circuit referenced an incident in which Neuhausser pointed a gun at one of his co-conspirators and conducted a strip search to look for a recording device.  Based on these facts, the DEA argues that "[i]t is reasonable to infer that the individuals who provided information about [Neuhausser] would fear for their safety . . . if their identities or the information they provided was revealed."  *Wassom Declaration*, ¶ 8.

In *Landano,* the Supreme Court stated that certain "generic circumstances [may exist] in which an implied assurance of confidentiality fairly can be inferred" and that the Government could make a sufficient showing of confidentiality for § 552(b)(7)(D) purposes on a "generic" basis when "certain circumstances *characteristically* support an inference of confidentiality." *Landano*, 508 U.S. at 179 (emphasis added).  Such an inference of confidentiality can be found in situations involving investigations of narcotics trafficking and conspiracies involving narcotics trafficking.

For example, in *Mays v. Drug Enforcement Administration,* the District of Columbia Circuit held that a source providing information about cocaine trafficking conspiracies "most assuredly" received implied assurances of confidentiality.   *Mays v. Drug Enforcement*

*Administration*, 234 F.3d 1324, 1329 (D.C. Cir. 2000).  Likewise, in *Rugiero*, the court found

that implied assurances confidentiality existed because the information given by DEA

informant's related to crimes that inherently involved violence and risk of retaliation, *i.e.*,

cocaine and heroin trafficking conspiracies.  *Rugiero*, 234 F. Supp. 2d 697.  These cases are

strikingly similar to the instant matter, inasmuch as the courts in those cases determined that

implied assurances of confidentiality existed based on a declaration of Ms. Wassom concerning

an investigation of cocaine trafficking conspiracies.  The District of Columbia Circuit's rationale

and its holding are highly persuasive here:

> In this case the cooperating individual supplied information about a conspiracy
> to distribute crack and powder cocaine.  *The pertinent question is whether the
> violence and risk of retaliation that attend this type of crime warrant an implied
> grant of confidentiality for such a source.*  They most assuredly do.

*Mays*, 234 F.3d at 1329 (emphasis added).

The United States District Court for the Western District of Texas, also relying on a

declaration from Ms. Wassom in a cocaine trafficking conspiracy, similarly held that:

> the situation presented here is of the kind envisioned by the Supreme Court in
> *Landano* when it held that certain circumstances characteristically support an
> inference of confidentiality, permitting the Government to claim exemption 7(D)
> without the need to detail the circumstances surrounding a particular interview.
> With billions of dollars at stake, it is no secret that drug traffickers are not above
> using brutal violence to silence those who have turned against them.  *It goes
> without saying that an individual who informs on drug runners for the federal
> government has a tremendous expectation that his or her identity not be made
> public for fear of reprisal.*  Accordingly, the court concludes that the DEA
> properly asserted exemption 7(D).  Those documents, or portions of those
> documents, designated as exempt from disclosure under 7(D) should not be
> disclosed.

*McNamera v. United States Dep't of Justice*, 974 F. Supp. 946, 962-63 (W.D. Tex. 1997) (emphasis added).

Ms. Wassom's declaration establishes that implied assurances of confidentiality existed here because the information given by the DEA's informants related to crimes that inherently involve violence and risk of retaliation. This holding is supported not only by the Plaintiff's convictions for conspiring to distribute cocaine and marijuana, but also by the Sixth Circuit's reference to an incident in which the Plaintiff pointed a gun at one of his co-conspirators and conducted a strip search to look for a recording device. This incident adds to the context of violence and risk of retaliation in this case and further suggests that implied assurances of confidentiality were present. Accordingly, the Court finds that the Defendant has provided adequate proof that its sources received implied assurances of confidentiality. Therefore, the Defendant has properly withheld such information from Plaintiff pursuant to § 552(b)(7)(D).

### (4)  Exemption 552(b)(2)-Exemption 2

Section 552(b)(2) exempts records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The Sixth Circuit has adopted a two-prong test, developed in other circuits, to determine the applicability of this exception. *Abraham & Rose v. United States*, 138 F.3d 1075, 1080 (6th Cir. 1998). First, the agency must show that the requested information it seeks to withhold relates predominantly to its rules and practices for personnel. *Id.* Second, the agency must show that the public has no legitimate interest in the information requested. *Id.*

-17-

This exemption applies to routine matters of merely internal significance. *Jones*, 41 F.3d 238 at 244 (quoting *Lesar v. United States Dep't of Justice,* 636 F.2d 472, 485 (D.C. Cir. 1980)). The Sixth Circuit has upheld the use of this exemption to withhold file numbers and symbols used to identify informants. *Jones,* 41 F.3d at 244-45 (citing *Kiraly v. FBI,* 728 F.2d 273, 276 n. 6 (6th Cir. 1984)).

In the instant case, the DEA claims that the documents requested by the Plaintiff which are subject to Exemption 2 contain "violator identifiers," consisting of G-DEP codes (codes assigned to all DEA cases which indicate the classification of the violator, the types and amounts of suspected drugs, the priority of the investigation and the scope of criminal activity); NADDIS numbers (numbers assigned to drug violators and suspected drug violators known to DEA); and informant identifier numbers.

According to Ms. Wassom's declaration, these identifiers are part of the DEA's internal system of identifying information and individuals and "provide sensitive information about individuals who cooperate with the DEA in carrying out its law enforcement functions." *Wassom Declaration*, ¶ 80. Ms. Wassom further states that if provided with these codes, "[s]uspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined the DEA knows about them or avoid detection and apprehension [and] create alibis for suspected activities." *Wassom Declaration*, ¶ 81.

In *Manna v. United States Dep't of Justice*, 832 F. Supp. 866, 880 (D.N.J. 1993), the court held that the DEA's G-DEP codes and NADDIS numbers satisfy the requirements of Exemption 2. *Id.* at 880. Specifically, the court noted that G-DEP codes and NADDIS numbers

-18-

are "matters related to internal agency practice 'in which the public has no substantial interest,' and which 'bear no relation to the substantive content of the records'") (citing *Lesar,* 636 F.2d 472, 485 (D.C. Cir. 1980)).   Consequently, based on these authorities and the information provided by Ms. Wassom, this Court finds that the Defendant's redaction of the G-DEP codes and NADDIS numbers were properly withheld pursuant to Exemption 2.

(5)  Exemption 552(b)(3)-Exemption 3

This exemption provides for nondisclosure of matters that are specifically exempted from disclosure by other statutes.  5 U.S.C. § 552(b)(3).  Section 552(b)(3) provides, in relevant part, that:

> This section does not apply to matters that are specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld  .  .  .

5 U.S.C. § 552(b)(3).  The DEA argues that the documents containing information obtained from the wiretap investigation of the Plaintiff's drug organization are covered by this exemption.  This information was obtained pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2521.  Courts considering this issue have held that this statutory section "falls squarely within the scope" of Exemption 3 because its language clearly evinces Congress' intent that intercepted material, except in a few well-defined circumstances, remain secret.  *Lam Lek Chong v. United States Drug Enforcement Administration*, 929 F.2d 729, 733-34 (D.C. Cir. 1991); *Smith v. United States Dep't of Justice*, 251 F.3d 1047, 1049 (D.C. Cir. 2001).

-19-

The Plaintiff has not disputed that the documents containing information obtained from the wiretap investigation are Title III intercepts. Thus, the Court finds that these documents need not be disclosed pursuant to Exemption 3.

### B.    The Privacy Act, § 552a(J)(2)

The DEA also seeks to withhold information pursuant to the Privacy Act, 5 U.S.C. 552a(j)(2). Although the Court has conducted a separate inquiry into its reliance on Exemption (j)(2) of the act, due to the substantial overlap between this exemption and FOIA's Exemption 7 (discussed above) under the circumstances of this particular case, the Court will not discuss this exemption in great detail.

The Privacy Act enables individuals to gain access to records or information pertaining to themselves contained in an agency's system of records. 5 U.S.C. § 552a(d)(2); *Exner v. FBI,* 612 F.2d 1202, 1203-04 (9th Cir. 1980); *Londrigan v. FBI,* 722 F.2d 840, 843 (D.C. Cir. 1983). However, Exemption (j)(2) allows the head of an agency to promulgate rules to exempt from the Privacy Act's access provisions "any system of records within the agency," as long as the system of records is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws . . . and which consists of . . . (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual." 5 U.S.C. § 552a(j).

In this case, the DEA withheld documents and records that were part of the Investigative Reporting and Filing System ("IRFS") case files. Because these documents were compiled for a criminal law enforcement purpose, they are exempt from disclosure under the Privacy Act. *See*

-20-

*e.g., Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982); *Simon v. United States Dep't of Justice*, 752 F. Supp. 14 (D.D.C. 1990).  Thus, the Defendant properly withheld these documents.

### C.    Segregability

FOIA further requires that an agency disclose "any reasonably segregable" portion of a record that falls within one or more the Act's exemptions.  5 U.S.C. § 552(b).  In *Dean*, this Court, relying on language from the Sixth Circuit, discussed the FOIA principles of segregability:

> the agency has the burden to show that portions withheld are not segregable from the disclosed material . . .  Under this principle of segregability, an agency cannot justify withholding an entire document simply because it contains some material exempt from disclosure. . . .  Rather, an agency must supply a relatively detailed justification and explain why materials withheld are not segregable. . . .  A district court errs by approving the withholding of an entire document without entering a finding on segregability.

*Dean*, 389 F. Supp. 2d at 793 (citing *Rugiero*, 257 F.3d at 553) (citations omitted).

Neuhausser asserts that DEA failed to produce all reasonably segregable material in documents withheld in their entirety.  Specifically, he claims that the agency has failed to satisfy its burden of proof inasmuch as it has made only conclusory assertions of nonsegregability.  Conversely, DEA argues that the declaration of Ms. Wassom provides a full explanation as to why segregation is not possible.

As previously noted, courts should "accord substantial weight" to an agency's affidavit regarding FOIA exemptions.  5 U.S.C. § 552(a)(4)(B).  However, in satisfying its burden of proof regarding segregability, the agency must show that all "reasonably segregable" material has been released and "must provide a detailed justification for its non-segregability." *Johnson*

-21-

*v. Executive Office for United States Attorneys,* 310 F.3d 771, 776 (D.C. Cir. 2002) (internal quotation omitted); *see also Mead Data Cent., Inc. v. United States Dep't of Air Force,* 566 F.2d 242, 254 n. 28 (D.C. Cir. 1977) (the agency must "describe the factual content of the documents and disclose it or provide an adequate justification for concluding that it is not reasonably segregable from the exempt portions of the documents").   The explanation must include a specific finding for each document withheld.  *See Perry-Torres v. United States Dept. of State,* 404 F. Supp. 2d 140, 145 (D.D.C. 2005);  *Animal Legal Def. Fund, Inc. v. Dep't of Air Force,* 44 F. Supp. 2d 295, 302 (D.D.C. 1999) ("[T]he Defendant shall not offer one finding for *all* documents.") (emphasis in original).

In her declaration, Ms. Wassom states that "each page was examined to determine whether any reasonably segregable information could be released."  According to Ms. Wassom, pages were withheld in their entirety when the release of additional information would

> (1) result in the disclosure of no useful information . . . (2) could result in compromising the identity of and information provided by sources . . . (3) would be an unwarranted invasion of personal privacy . . . and (4) place in jeopardy the lives and safety of third parties.

*Wassom Declaration*, ¶ 110.   Ms. Wassom lists the specific pages that were reviewed for segregability.   She also provides the content of each page and states the specific reason for withholding the entire page.   Based a review of the *Vaughn* index and Ms. Wassom's declaration, the Court finds that the information provided is sufficient to fulfill the DEA's obligation to provide a "relatively detailed justification" regarding why the documents listed cannot be further segregated.  *Rugiero*, 257 F.3d at 553.

### D.      Information Regarding Theodore Dunlap

Neuhausser also argues that the DEA erred in not releasing documents concerning statements made by Theodore Dunlap to law enforcement agents.  According to the Plaintiff, this information should not have been withheld because Mr. Dunlap provided a waiver of confidentiality.  The Defendant claims that this argument is a red herring, inasmuch as Mr. Dunlap's waiver was provided after the FOIA requests were processed, after this suit was filed, and after the *Vaughn* index was prepared.  Thus, the DEA contends that while this waiver may now authorize release of this information, it does not retroactively invalidate the DEA's original FOIA response.

Neuhausser  relies on Rule 26 of the Federal Rules of Civil Procedure to support his claim that this information should be disclosed.  Specifically, he contends that, under Rule 26, the Defendant has a duty to supplement its disclosures.  However, as correctly noted by the Defendant, Rule 26 does not provide for the release of information pursuant to the FOIA.  Moreover, the Plaintiff cannot simply avoid the FOIA process by simply making additional requests for information during civil litigation.

Because the DEA has not been given the opportunity to process Neuhausser's request for documents containing statements made by Theodore Dunlap (since he provided a waiver), this Court cannot order disclosure of this material inasmuch as he has not yet exhausted his administrative remedies regarding this request.  *See Wilbur v. C.I.A.*, 355 F.3d 675, 676 (D.C. Cir. 2004) (exhaustion of administrative remedies is generally required before seeking judicial review).

-23-

## IV.    CONCLUSION

Neuhausser's FOIA requests were correctly processed.   Further, the applicable exemptions cited by the DEA justify the withholding of the additional information sought by the Plaintiff.   Accordingly, it is hereby **ORDERED** that

(1)     The Defendant's motion for summary judgment [Record No. 86] is **GRANTED**;

(2)     The Plaintiff's motion for summary judgment [Record No. 84] is **DENIED**;

(3)     This case is **DISMISSED** and **STRICKEN** from the Court's active docket; and

(4)     A separate Judgment will be entered this date.

This 6th day of June, 2006.

Signed By:

_Danny C. Reeves_   DCR

**United States District Judge**

-24-